One case for argument this morning, number 25-60327, Nicholas Services. All right, Mr. Kidd, we're ready when you are, sir. Good morning. Morning. Sterling Kidd on behalf of Nicholas Services and Core Flight. I intend to discuss three topics with the panel time permitting. The first is that this court has jurisdiction to review the sever and transfer order. The second is that the sever and transfer order should be reversed. Keep your voice up, please. Yes, Your Honor. And the third is that Core has stated a claim. Let's turn to jurisdiction first. The court has jurisdiction to consider the sever and transfer order. We know that because the United States Supreme Court has told us that you do. In Banker's life, that's 346 U.S. 379. It said flatly, a sever and transfer order is reviewable upon appeal. Was that a grant or a denial of transfer? That was a grant. I believe, Your Honor. Really? Well, let me do this. I'm not going to tell the court something wrong. I have three minutes for rebuttal. Let me reserve that. Let me answer the court's question in rebuttal, unless the court already knows the answer and wants to just talk about it. I'll give it to you that it was a denial. Do you have a case off the top of your head, or maybe you could provide it when you stand back up, where a grant of a transfer was reviewed on direct appeal? I do not know the posture of all of the cases reviewing the transfer orders, Your Honor. But I think I know the reason, or I don't want to presume to read the court's mind. But let's just engage in a dialogue and see if I can get to give the court some useful information as to where the court's going. Well, let me ask it this way. We obviously have cases. You've cited them. You're aware of them. Your friend on the other side has cited them. Where we have reviewed the grant of a transfer in mandamus, correct?  That's right, Your Honor. In order to establish mandamus, you must be able to show, as the movement, the mandamus requester, that there is no other adequate remedy beyond mandamus. It's the last resort. It's the Hail Mary pass. When in those cases, we say the reason that you have no other remedy is that you can't review this on a direct appeal. So the only way to review the grant of a transfer. Now, on denial is fine. We can always litigate whether and to what extent it should have been transferred, because the case stays within our jurisdiction. But once the case is sent to a different jurisdiction, so we have cases going, like yours, to California. We have the defense distributed cases going to New Jersey. Once it's transferred, it's gone. And there's nothing else to do, which is why mandamus is so important and why those cases are decided on a short fuse. So help me understand how your position would square with the long line of mandamus cases that say there is no way to review this on direct appeal, this being the transfer. Sure, Your Honor. And I'm glad to engage with that question. So first of all, mandamus is, as the court described it, obviously an extraordinary remedy. But those cases, as I read them, do not say it is the only remedy. I don't think that's what mandamus requires. And I don't think that's what those cases hold. In fact, what the cases hold would fit within a denial as well. And the reason for that is, Your Honor, well, maybe they wouldn't, because they would never appeal denial of a transfer if they won. But the point being, Your Honor, the reason the cases say that, the reason they say, oh, well, you have to do it here, really, you have to deal with mandamus, are really two reasons. The first is the cases say, well, you can't show you would have won in the original form. Well, we can show that, because Nicholas did win in the original form. It did survive a Rule 12 challenge. And then it got sent to the Northern District of California. The Northern District of California refused to give the Northern District any comedy at all, revisited the order, and reversed what the district court did. And so I don't want to stray into the merits just yet, because I know we're talking about jurisdiction. But that's precisely what the Rolls-Royce opinion held is something to be avoided. Well, counsel, the problem I have with that argument is the case law, to me, seems to say that once the case is transferred, once the case is sent to another jurisdiction, then we no longer have jurisdiction to do anything with that case. And that sent is just the clerk of court, one court sending it to the clerk of the other court. That completes the transfer. And there's no jurisdiction in the end. We no longer have any jurisdiction over that case. That's how I read the case law. I may be reading it incorrectly. Well, respectfully, Your Honor, I think you were reading it slightly incorrectly, in that you do have some power. The power you have may be limited. The power you have is to direct the fine error and tell the district court. I'm sure you're going to direct me to a case that says exactly what you're telling me now, what case you want me to keep an eye on. Your Honor, that would be, I'll give you the site when I stand back up. I believe it's Red Barn. You're obviously familiar with it now. Judge Oldham will tell me that's a, not unfairly, tell me that's a mandamus case. But the remedy still lies, I would submit to Your Honors, under a direct appeal, just as it would with a mandamus. And that remedy is, again, to tell the district from that case that I referenced, is to tell the district court you erred. And here's what you're to do. You're to write the transferee court. And say, please send the case back. Could you do that after judgment in the transferee court? I believe you could for a couple of different reasons. Help me understand what the district court would be saying. So you go from here to the Northern District of California. It goes all the way to judgment. There is a final, imagine there's also an appeal to the Ninth Circuit and search were already denied to the Supreme Court of the United States. The whole thing. And then, because of the way the calendar works, you have a direct appeal in the Fifth Circuit. And you win. What does the order say to the district court? Please go undo the judgment you entered? The district court in California. Yes, Your Honor. Thank you for clarifying. But I understood your question. Well, let me answer that one directly. And then let's talk about where we are in this case. Because you're not far off. And obviously, I know you're familiar with the record of the two cases. And that's why you're asking me. The answer, I believe, is unchanged, Your Honor. I mean, there's nothing in the cases that explain, that draws a distinction here to say you can't make that ask. Now, I think, Judge Oldham, does it make it less likely that the transferee court or the appellate court is going to grant it when it gets that far along? Maybe so. But that doesn't prescribe you, stop you from doing it. Stop this court from doing it, rather. Now, in terms of where we actually are, Your Honor, I think it is interesting that we are, of course, appealing in the Ninth Circuit, as the panel very likely knows. And that in the Ninth, we filed a motion to stay that appeal, pending a decision here. That motion was carried with the briefs. But although that case had been briefed well before this one, that case is set tentatively for argument in April or May. And so there's at least some indication that maybe the Ninth Circuit is willing to consider something of that nature. But you're right. And that's what I would return to, in terms of what these cases say about jurisdiction, is there's no question that it's more difficult on a direct appeal. But there's nothing that says that it's impossible. And again, I understand the distinction. The court asked about the start. But ultimately, bankers' life didn't say it was limited. It didn't turn on the fact that it was a denial of a motion rather than a grant. And so to the extent there are panels of this court, or even an in-bank court that's held otherwise, bankers' life would have to control. Now, I know the court is interested in jurisdiction. I don't want to move on completely, unless the court. But I do want to talk about my other client's claims if I can briefly, assuming I've answered the court's questions about jurisdiction. Are you handling the appeal in California? Yes, Your Honor. So you're going to argue that? Yes, Your Honor. OK. And I will argue for it. And when I stand up there, I will My first argument will likely be that they should state anything until this court has the chance to rule, Your Honor. Turning to Core's arguments, Your Honors, obviously we have two plaintiffs here. We have the plaintiff whose claims were transferred to the Northern District of California under the severance and transfer order. And then we have Core's claims. So Core's claims stay before the Northern District of Mississippi. And the court ultimately dismissed those claims on two grounds. One, the court held that the reviews were not, under Mississippi law, the reviews, if they don't name the plaintiff, they have to be of and concerning the plaintiff. And the district court held that requirement was not met, because an objective reader could not understand the reviews to relate to Core, since they didn't use Core's name. But Core alleged in its complaint that it hires employees. It hires, essentially, all of Nicholas's services employees. And Nicholas Ayer, the actual entity on the Glassdoor website, is just a brand. And it alleged that when people came in to interview with Core, they said, these reviews are about you. And we're deterred from working for you. So an objective person, those persons clearly understood that it related to Core. And Judge, the Northern District of Mississippi's only comment on that issue was, essentially, that those people weren't acting reasonably. Well, that's weighing the evidence, which the district court certainly can't do at Rule 12, and really shouldn't even do it at Rule 56. But we're only doing the Rule 12 now. So the Northern District of Mississippi further held that although Core and Nicholas had initially stated a claim that survived Section 230, that in this instance, our arguments require the court to go beyond the portions of the reviews that survived Section 230. So the problem with that, Your Honor, begins and ends really with the statutory text. And that's in Section 230F3. It says, there is no immunity for someone who is responsible in whole or in part for the creation of the development of the content on this website. As the Northern District correctly held initially, Glassdoor is responsible in whole or in part for these reviews. And in the record at 400-401, he correctly noted that negative reviews from an employee and negative review from an employee carries more weight than a negative review from a third party or a contractor, and by forcing users to state they are or were employees and giving them no other options. Glassdoor is effectively making the employee statements themselves. So what this rubric creates, Glassdoor's rubric creates, is a website whereby folks are required to log in. They're required to say their employees are former employees, and then they provide their commentary such that they created in part the content. And so maybe I'm partially to blame for this, Your Honor, but there's a lot of discussion in the briefing about roommates and whether this case is exactly like roommates. Well, of course it's not exactly like roommates, and it doesn't have to be. What matters is whether it satisfies the statutory test. But the case does, roommates does provide a useful framework for this court to analyze in terms of finding that Section 230 does not always apply, and it does not apply here. So Your Honor, I want to make, Your Honors, I want to make sure I got the chance to discuss court's claims given the court's questions on jurisdiction. I believe I owe the court an answer to one of the questions about. If we determine, not saying we are, but if we determine that we don't have jurisdiction, and rule before you go to California, so when you get to California, you know what this panel has done, what does that do to your argument out there? Well, it's a good question, Your Honor. So first of all. I try to ask a good one every now and then. Well, it's difficult, but my colleagues, they ask great questions. I try to get a good one in every so often. Well, Your Honor, so first of all, you certainly have jurisdiction over cause of error. Well, I didn't ask you to abandon your argument. Don't get me wrong. And I'm not presaging what we'll do. I'm just thinking through the possibilities, since you mentioned to us that that case is out there, you would be the one arguing it, and that it's set for April. So obviously, I know what you would argue out there. If we said we did have jurisdiction, so I was just asking if we were to hold no jurisdiction here. Sure. So I would focus, obviously, the only claims there are Nicholas's claims. And so my arguments would focus on Nicholas's claims. At that point, the sever and transfer order would effectively be unreviewable. There would be no argument to the district court there. I reserve the right to, I suppose, maybe, Your Honor, I could try to argue that they should send a request to the district court to send it back to Mississippi. But I would submit to you that that is far more ill-postured than this court is to review the Northern District of Mississippi, because you have jurisdiction to review when the Northern District of Mississippi makes error, whereas the Ninth Circuit really does not. And so my guess, as I stand here today, Your Honor, would be that I would argue to the Northern District of California just on the Section 230 issue as to Nicholas, similar to the arguments I've made to you, although, obviously, they're a little bit different. But briefly, Your Honors, if the court does assume jurisdiction or does agree with me that it has jurisdiction over the sever and transfer order, this court and the Supreme Court have given district courts factors that they are required to consider in reviewing sever and transfer orders that the district court here simply did not review the pertinent factors at all. If it had, it would have found that there was not a basis to sever and transfer based on a number of, and I know I'm almost out of time, so very quickly, the relative, the situation where my client had to get on the website to address these reviews, and also just the localized interest in having a matter like this decided at home, a Mississippi company that's being widely defamed on a website, and just the judicial ineconomy of it all, which is, as I've already alluded to, we have one order holding Nicholas constated claim, we have another saying it came on the same case. All right, you've reserved your rebuttal time. Thank you, sir. All right, we'll hear from Mr. Frimmel. Good morning, your honors. Good morning. My name's Bill Frimmel, I represent Glassdoor. Thank you for having us here today. It's an honor and a privilege, especially coming from a different state. I don't have a peer that I've been able to find that's argued in front of the Fifth Circuit, so that's about the only positive distinction I have from my peers, so I'll take it. Well, you came during Mardi Gras time, so whoever you're billing, make sure you get the benefits of your trip to New Orleans, and probably not all of that has to, well, anyway, I won't say that on the tape. All right, well, enjoy your trip here. Thank you, thank you. Well, look, this appeal bundles two very different things, and the first is an effort to unwind a long-completed severance and transfer to the Northern District of California, and second, to address the merits of Core's Mississippi defamation claims, and I'll begin with what the court is obviously quite interested in, and that's the jurisdiction, and I'd argue no jurisdiction, and then I'll turn to why Core's defamation claims fail. This court, with all due respect, and the district court below it, has lost jurisdiction to grab the cases back and to hear this on appeal. I'm often not the most articulate person, so I'm gonna quote the controlling precedent in the Fifth Circuit. That's defense distributed versus Platkin, and there they say, forgive me for quoting, but it's really concise and right on point. Indeed, transferring the case out of our territorial jurisdiction is the crux of the issue. In Brock, we cited Red Barn, which stated that, quote, it seems uncontroversial in this situation that a transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly, and then it goes on to cite Chrysler Corporation, and here's the practical conclusion from Platkin. Quote, the transfer ended our control over the case. So what is supposed to happen? Well, Nicholas Eyre could have and should have, frankly, asked for a stay of the transfer. Barring that, then we do roll into mandamus, and we know that Red Barn is right on point with this, but Red Barn is also on point to say, too late. Nicholas Eyre delayed, and they waited too long to even ask for mandamus now. Three months in Red Barn was too late. Here, we're over a year and a half, and then, of course, even if you do get the mandamus, what do you do? You ask for California to bring it back, but because of the lack of diligence, there's really not even an opportunity for mandamus here. I'd like to address quickly some of Mr. Kidd's points and Nicholas Eyre's points on the supplemental brief and their issues, but I think the first thing to really point out is what's missing from the supplemental brief, and that's any reference or citation to the Platkin case. As you heard from what I just read, smack dab on point, but they do have a attractive argument in the sense that there is a United States Supreme Court case that's been cited to you. Well, there's a difference and some distinctions in that case. First of all, the Bankers Life case was a matter in which the transfer was within the same district. Massive difference, whereas here, as we've talked about and you've alluded to, the jurisdiction is gone. A second observation I found late last night, far too late last night, was thanks to Judge Graves and your dissent in the Epley case, and there, Judge Graves did point out that the Bankers Life case addressed the view of a transfer under 1406, whereas what we're dealing with here is a transfer under 1404, and those are different remedies and different reasons why cases get transferred, and there very well can be different reasons why mandamus might apply to one, but not to another. Very quickly, there was the Action Industry case. That was one of the, a denial of transfer case, and there was no completed out-of-state transfer, so the whole urgency and last resort to mandamus wasn't an issue. It was also the confirmation of an arbitration award, so we already had an adjudication on the merits before the case even got to the Court of Appeals. Again, why would you have mandamus if you've already had your case adjudicated? Gosh, I'll skip through all the others. I think they're fairly clear, and our papers address them. Plus, I like talking more about defamation. That's really more of what I've grown up with with Glassdoor and have had the opportunity to look at, and boy, it's an interesting, it's a really interesting topic. Well, let's start with that, then. Mississippi law imposes two strict, and the case law emphasizes strict restrictions on defamation claims. They're somewhat of gatekeepers. The first is the alleged defamation must be clearly directed toward the plaintiff, otherwise known as the of and concerning element. The second restriction is the alleged defamation must be clear and unmistakable from the words themselves. Little preview of coming attraction here. That becomes critical when we're talking about what's at issue when it comes to defamation. So Court loses on both of the restrictions. Applying the first restriction, clearly directed at or of or concerning, the reviews sit under Nicholas Ayer's profile page. There is a profile page for Core. There's nothing, none of the reviews, well, there are no reviews for Core, but all of these reviews sit under Nicholas Ayer's profile page. Core is never mentioned, nor would a reasonable reader understand that the language Glassdoor is accused of creating, which is current or former employee, is of or concerning Core. So the District Court did address this as well, and they referred to what Core, their own corporate separatistness argument that they used, that Nicholas Ayer used, or Core actually used, to defeat its own transfer to California. They claimed the parties were so separate that Core should not have been considered to have consented to the terms of use in the form selection clause. And the District Court order itself makes this point. It says Core previously persuaded the court it received no benefit from the Glassdoor account or the terms of service, and that undercuts its later attempt to claim Glassdoor's alleged statements were about Core. It's also important to understand that the tag that we've come to call it in this case, the current or former employee tag, is all that Glassdoor is alleged to have created. A little bit of concern I had with Mr. Kidd's argument was I think a little bit of slippage into reference to the reviews. Well, let's be clear on the reviews versus what I'll call the tag. The tag is what Glassdoor's argued to have created. I would suggest they did not create that wording, but even if they did, that's what's at issue for Glassdoor's alleged defamatory statements. Current employee, former employee, not the reviews from third-party authors. Finally, I want to throw a new issue out there that I also realized late last night, and that's this again on the of and concerning. If we're to take Core's allegations as true that they are the entity that employs people, and if we are to assume that the language from Glassdoor of employee, current or former is of or concerning Core, it's true. Now this language that is allegedly defamatory by saying there are current and former employees, it's true, Core has current or former employees, and truth is the ultimate defense and defamation. Applying the second restriction that the language is clearly and unmistakably defamatory, Mississippi law looks at the words themselves, and this is where it gets back to how important it is that we're actually talking about what it is that Glassdoor has alleged to have said that is allegedly defamatory. And in its analysis of what is clear and unmistakable, Mississippi law is very clear that you cannot look to innuendo speculation or conjecture. And I would propose, and I think it's frankly common sense that the phrase current employee or former employee does not inherently cause reputational harm, and therefore it fails the second restriction. Ferguson is probably my best case on this, but there's a whole slew that we've cited on this. There's also been a little bit of slippage into a suggestion of what I admittedly call Nicholas Ayer's contributory negligence theory, or sorry, contributory defamation theory. There is no such thing. The words are defamatory in and of themselves, and you don't look to see how serious one takes the speaker. They're either defamatory or they're not. Let's see. There are two alternative bases for affirming the courts, the district court's granting of a judgment on the pleadings, and that's section 230, and it's also a failure by core to actually identify specifically the statements that it alleges are defamatory in the reviews. Under 230, I'll emphasize the fair housing case. The fair housing case is impactful for two reasons. One, it identified for really one of the first important times that an internet service provider isn't always immune under section 230. It's equally as important, though, within the court's opinion how they took great pains to explain the limitation on its ruling and how they weren't throwing open the doors to liability under 230. There's a very unique case with fair housing, and in that case, it wasn't a defamation case. It was a matter of people going online and entering information and searching for people to be roommates. And in fair housing, the court made incredibly clear the problem was the questions asked were unlawful themselves. You could not ask that question. They made the point you can't ask that question if you were sitting in a real estate office, and you can't ask that question if you're presenting it up on a website. That was the crux of why liability was lost under 230. The court went on to caution that that and only that is what it was finding eliminated liability under 230, and it went on to provide examples that are analogous to what we have here, where if all you're doing is creating opportunities for people to engage on the website, and they're not in and of themselves unlawful, then liability remains. And that's what we have here. It's not unlawful for a website whose purpose is to gather and share information about experiences in the workplace to ask people if they are a current or former employee. Those questions are not inherently unlawful, and therefore, there is protection for those. Let me just take a quick look at my notes.  There were a few comments I just want to address. Mr. Kidd and I fortunately have a really good relationship, and I think he knows I say these things as an advocate, not personally. I think that there was a little liberty with the suggestion that the underlying district court did not consider the underlying factors in transferring the case. And I'd point out that the district court's own order expressly goes out of its way to indicate that it has considered those factors. It cites Inouye Rolls-Royce, and it says the factors here don't come close to those even in Rolls-Royce, and therefore, after considering those factors, I'm going to move it on. Parenthetically, are you handling the case in California? I am, Your Honor. Also, it's a nit, but I'm going to raise it. Mr. Kidd suggested that his client had to go onto Glassdoor to address the reviews. There is no evidence of that, and there is not an allegation of that. The second amended complaint makes no mention of it, and there is a reference to it in their pleadings, but there is no effort to support it, and in fact, no responses to the reviews were made. So the point being, oh, we had to sign up for the terms of use because we needed to respond online. There were no responses online. So that is, it's a questionable suggestion to why they signed up. But is he right? Would they have been able to respond without going to Glassdoor? On the Glassdoor website, I would submit very unlikely. We don't know. No one has ever asked, frankly, that I'm aware of, and I am not aware of anything where Nicholas Eyre asked. Hey, we don't like the terms of service. We don't want to be subject to jurisdiction in California. Can we just, can you just throw up a response for us? We don't know if that was, I'm not aware that that was requested. But there are plenty of other opportunities to get your word out otherwise. But to answer your question directly, I don't think that would have happened, but it was not asked. When you say there were plenty of opportunities to get your word out otherwise, that is to say they couldn't go directly to Glassdoor and address those reviews, isn't that right? I believe what you're saying is correct, that absent permission from Glassdoor, either by through Nicholas accepting the terms of use, or going to someone at Glassdoor and asking for an exception to accepting the terms of use. You're right. Well, but one of their complaints against Glassdoor is they made all these efforts to contact Glassdoor and say, these reviews are hurting us, take them down, handle them, and they got no response from Glassdoor. Isn't that one of their complaints? I would dispute, this is a factual issue, but I would dispute that they never heard from Glassdoor. Glassdoor did respond, but your honor, Glassdoor's website makes very clear that it is not the arbiter of questions of fact, and I deal with, frankly, on a weekly basis, people asking to remove reviews on Glassdoor and addressing them. I'm happy to go into that, but if Glassdoor were to remove a review every time someone asked, there would be less reviews on Glassdoor. Okay, I feel awkward walking away with some time, but I'm not gonna waste your time, unless there are questions. We feel grateful when you walk away. I should have done it a little earlier. It's a sign of assurance, though. Thank you. All right, thank you. All right, thank you, Ms. Kidd. You've reserved your rebuttal time. Thank you, your honor. What I wanna do first is address, I made a commitment to look and try to answer Judge Oldham's question. Judge Oldham, looking in those 20 minutes, I did not, and also trying to listen to my adversary, I did not find a case in that period of time. None of the cases I've cited apply in that unique circumstance. If the court would so allow, I'd ask for 24 hours to submit a letter brief if I find anything, or I can just submit a letter brief and say I didn't find anything, one way or the other. But in terms of, and still trying to stay on the court's question, even if that's the answer I have in terms of the posture of the cases, I just continue to reiterate, your honor, that our view is that bankers are like controls. It doesn't say that it exists only because of the, it doesn't say that its holding is limited to its specific facts. And I know I'm citing a dissent, but as Judge Higginson noted in his dissent that we cited in our letter brief, our supplemental brief, rather, we have a sever and transfer order. The severance issue is different. At a minimum, that ought to be reviewable. And the majority really didn't engage a whole lot with Judge Higginson's dissent, and certainly didn't take it head on. A couple of other things I would say, your honors, I mean, certainly, the court does have the authority, if it so chose, to construe our notice of appeal as a request for mandamus if we actually got there. And so that, I would ask the court to do that if it feels like it's necessary. We believe we have jurisdiction under direct appeal. And as I noted, your honors, in terms of the mandamus, we're in a little bit of a unique situation here, because we can show the irreparable harm for the very reason that I noted at the outset. We have one district judge saying Nicholas states a claim under Section 230, and nothing changes. The plea doesn't change, nothing changes. The case simply gets transferred. And another judge holds otherwise. And also, in terms of the diligence, there is a discussion about, there is a discussion that Nicholas should have immediately moved to stay the order before it was transferred. Well, he couldn't have. The record reflects that the electronic transfer happened the same day as the transfer order was entered on the docket. And we have also, as I noted, asked the Ninth Circuit to stay its decision. And just very quickly, in my 15 seconds, the Section 230 issue, we have one post, we have one series of comments. And so I didn't stray, counsel's right, we are friendly. I didn't stray, I meant exactly what I said. There's a post that says, I'm a former employee or I'm a current employee, and there are all these awful things. That's content. Glassdoor created it in part, and so it's liable under Section 230. All right, thank you, sir. Do you want the 24 hours, or were you just kind of speaking? No, if the court will allow it, I'll take it. And I'll do whatever the court tells me to do. If the court tells me to file a letter saying I found nothing, I'll do that. Well, we're not gonna order you to do it. We just, you know, listen if you feel like. I'd like to have the chance. Just search as well. All right, the clock starts right now. Thank you, Your Honor. Thank you very much. So that means we'll get it while we're still here in New Orleans. I completely approach you with the unanimous response from us to their letter. Well, I'll tell you what. You both got 24 hours starting at this minute. You find something, you file it with us, and in the meantime, you want to, you know, simultaneously reiterate what you've already reiterated, which is say there are no cases, then let's do it. But that way, we get it while we're here, and we'll hopefully one way or another rule and dispatch so it wasn't one prejudice in him. We're good? All right, thank you, both of you. Appreciate your argument in the briefing. The case will be submitted along with the other cases. For today, panel will stand at recess until 9 a.m. tomorrow. All rise. Thank you.